UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:12-cv-80194-MARRA/HOPKINS

NATIONWIDE LIFE INSURANCE COMPANY,

Plaintiff,

vs.

DAVID V. PERRY and NINA GEORGE,

Defendants.

_____/

DAVID V. PERRY,

Counterclaim Plaintiff,

vs.

NATIONWIDE LIFE INSURANCE COMPANY,

Counterclaim Defendant.

_____/

DAVID V. PERRY,

Cross-claim Plaintiff,

vs.

NINA GEORGE,

Cross-claim Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court upon Cross-Claim Defendant Nina George's Motion to

Dismiss Cross-Claim and to Strike Allegations of Cross-Claim (DE 17), filed June 22, 2012.

Cross-Claim Plaintiff David V. Perry filed his response to the motion on July 30, 2012 (DE 31). No reply memorandum was filed.  The Court has carefully considered the Motion and is otherwise fully advised in the premises.

I.  Background

On February 20, 2012, Plaintiff Nationwide Life Insurance Company ("Nationwide") filed an interpleader complaint based on its December 15, 1999 issuance of a variable annuity contract. (Compl. ¶ 7, DE 1.)  According to the allegations of the Complaint, the annuity named the "Perry Trust" as both the owner and primary beneficiary of the annuity and named Robert P. Perry (the "decedent") and his wife, Dorothy Perry, who passed away on February 22, 2002, as co-trustees of the Perry Trust. (Compl. ¶ ¶ 2, 8, 10.)  The annuity named the decedent as the annuitant and did not name a contingent beneficiary. (Compl. ¶ 9.)  David P. Perry ("Mr. Perry") is the grandson of decedent and purports to be the successor trustee of the Dorothy E. Perry credit shelter trust.  Mr. Perry asserts that the credit shelter trust owns the annuity at issue in this action. (Compl. ¶ 2.)  At the time of decedent's death, Nina George ("Ms. George") was the spouse of decedent. (Compl. ¶ 3.)

Nationwide received a beneficiary change request for the annuity, dated June 15, 2009, which named Ms. George as the primary beneficiary and decedent as the contingent beneficiary. The signature line on the change request reflected decedent's name. (Compl. ¶ 12.)  Nationwide sent a letter, dated June 22, 2009, to the Perry Trust, to confirm these changes.  In response, Nationwide  received by facsimile from Ms. George a durable power of attorney for the decedent, which appointed the decedent's "friend, Nina George, as [his] attorney in fact." The durable power of attorney appears to have been signed by the decedent. (Compl. ¶ 14.)  Upon information

2

and belief, on May 2, 2010, the decedent passed away. (Compl. ¶ ¶ 16-17.)

On May 25, 2010, Nationwide received a beneficiary claim form. Rather than requesting a lump sum distribution from the contract, which a beneficiary is permitted to do, Ms. George elected to transfer ownership of the annuity to herself.  The beneficiary claim form also reflects a request to change the primary beneficiary from herself to Stephanie Ephraim, who is purportedly Ms. George's daughter. (Compl. ¶ 18.)  In response, Nationwide sent a letter, dated May 25, 2010, to the Perry Trust, confirming the new beneficiary designation. (Compl. ¶ 19.)

Approximately four months after receiving notice of decedent's death from Ms. George, Nationwide received a letter dated September 28, 2011, from Mr. Perry's attorney. (Compl. ¶ 21.)  The September 28 letter describes several purported disputes between Mr. Perry and Ms. George regarding ownership of the annuity, the rightful beneficiary of the annuity, and the successor trustee of the credit shelter trust, which Mr. Perry contends owns the annuity. (Compl. ¶ 23.)  The letter also requested that Nationwide prohibit Ms. George from making any further withdrawals or take any further distributions from the annuity. (Compl. ¶ 24.) Because of this dispute, no withdrawals, distributions, or other disbursements have been made from the annuity since Nationwide received the September 28, 2011 letter. (Compl. ¶ 25.) Nationwide takes no position on who is entitled to the benefits.  It  is ready to pay the proceeds to the person entitled to it, and it has deposited the contract value with the Court.[1] (Compl. ¶ ¶ 30-33.)

Mr. Perry filed an Answer to Nationwide's Complaint, along with counterclaims for

---

[1] On September 12, 2012, Nationwide deposited the funds in the registry of the Court. (DE 39, 40.)

negligence (counterclaim count one), aiding and abetting breach of fiduciary duty (counterclaim count two) and liability for attorney's fees (counterclaim three) against Nationwide.  He has also filed crossclaims for tortious interference with expectancy (crossclaim one) and aiding and abetting breach of fiduciary duty (crossclaim two) against Ms. George. (DE 8).  In bringing the crossclaims, Mr. Perry alleges the following:

    After Nationwide received a beneficiary claim form from Ms. George, requesting the transfer of the annuity to herself, Nationwide distributed $50,000.00 to Ms. George. (Crossclaim ¶¶ 51-52.)  Had Nationwide inquired, it would have learned that Ms. George had "insinuated herself into the life of Robert Perrty based on lies and deceit, for the sole purpose of financial gain." (Crossclaim ¶ 53.)  In 2008, Ms. George was 42 years old and decedent was 90 years old. (Crossclaim ¶ 54.)  Upon information and belief, Ms. George was "living with her 'husband' or longtime companion, Theodore Ephraim, and their daughter Stephanie Ephraim, when she met [decedent].  However, she falsely claimed to [decedent], his attorneys and neighbors, that Theodore Ephraim was her brother." (Crossclaim ¶ 55.)

    Ms. George "ingratiated herself to the very lonely [decedent] and soon, [decedent] became completely dependent on her."  (Crossclaim ¶ 56.)  Ms. George subsequently "engaged in a pattern of financial abuse" directed at both decedent's personal assets and the assets of the Perry trust and the credit shelter trust. (Crossclaim ¶ 57.)  After establishing a relationship with Ms. George, decedent began withdrawing tens of thousands of dollars, despite his "long history of conservative spending."  For example, on April 17, 2008, decedent signed a second restatement to the Perry Trust which provided for a $250,000.00 bequest to Ms. George, or if she did not survive him, to Stephanie Ephraim (Crossclaim ¶ 58.)  Next, on May 7, 2008, decedent

4

signed a first amendment to the second restatement of the Perry Trust, increasing his bequest to Ms. George from $250,000 to $400,000 and giving that bequest priority over all other bequests. (Crossclaim ¶ 59.)  Decedent also created a joint account with Ms. George at Wachovia Bank, paid significant amounts to Ms. George, paid for Ms. George's car and made additional changes to his trust that benefitted Ms. George. (Crossclaim ¶ ¶ 60-61.)

On September 3, 2008, decedent executed a durable power of attorney naming Ms. George as his attorney-in-fact, which was not prepared by decedent's longtime estate planning lawyer but by a new attorney.[2] (Crossclaim ¶ 62.)  On November 10, 2008, decedent and Ms. George married. (Crossclaim ¶ 63.)  Subsequent to the marriage, decedent made a $16,000 payment to Ms. George for her mother's expenses and tuition for Stephanie Ephraim. (Crossclaim ¶ 64.)  Throughout 2009, Ms. George wrote herself checks drawn on decedent's bank account and even forged decedent's signature on one or more checks.  Other checks were signed by Ms. George, as attorney-in-fact or joint owner. (Crossclaim ¶ 65.)

On December 3, 2009, decedent executed a new will and fourth amendment and restatement to the Perry Trust, which were prepared by another new attorney. (Crossclaim ¶ 66.) Specifically, the remainder beneficiary of the Perry Trust was changed from Mr. Perry to Ms. George. (Crossclaim ¶ 67.)   The next day, Ms. George wrote a check on decedent's account in the amount of $200,000 for the purchase of a residence and for which title was taken in the

---

[2] Both the Second Restatement of the Robert P. Perry Revocable Trust Agreement (DE 8-2) and the First Amendment to the Second Restatement of the Robert P. Perry Revocable Trust Agreement (DE 8-3) were drafted by decedent's original attorney.

names of decedent and Ms. George as tenants by the entirety.[3] (Crossclaim ¶ 68.)  Over the next

six months, Ms. George depleted the Perry trust account, thousands of dollars at a time. When

decedent passed away, there was only $953.00 remaining. (Crossclaim ¶ 69.)

Ms. George has now moved to dismiss the crossclaim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure and to strike the allegations of the crossclaim pursuant to Rule

12(f) of the Federal Rules of Civil Procedure.  (DE 17.)  Ms. George contends that the allegations

of the crossclaim are conclusory.  Ms. George also contends that the crossclaims should be

striken pursuant to Rule 12(f) because they are scandalous.

## II.  Legal Standard

With respect to the motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), the Court observes first that Rule 8(a) of the Federal Rules of Civil Procedure requires

"a short and plain statement of the claims" that "will give the defendant fair notice of what the

plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court

has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do. Factual allegations must be enough to raise a right to relief above the

speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations

omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[3] Title to the property is the subject of a separate lawsuit pending in Florida state court.
(Crossclaim ¶ 68.)

accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." <u>Id.</u> at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a party may move to strike "any redundant, immaterial, impertinent, or scandalous matter" within the pleadings. Fed. R. Civ. P. 12(f). Motions to strike, however, are generally disfavored by the court. <u>See</u> <u>Williams v. Jader Fuel Co.</u>, 944 F.2d 1388, 1400 (7th Cir. 1991). The reason is that courts consider striking a pleading to be a "drastic remedy to be resorted to only when required for the purposes of justice." <u>Augustus v. Bd. of Pub. Instruction of Escambia County, Fla.</u>, 306 F.2d 862, 868 (5th Cir.1962)[4] (quoting <u>Brown & Williamson Tobacco Corp. v. United States</u>, 201 F.2d 819, 822 (6th Cir. 1953)); <u>Exhibit Icons, LLC v. XP Companies, LLC</u>, 609 F. Supp. 2d 1282, 1300 (S.D. Fla. 2009).

---

[4] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. <u>Bonner v. Pritchard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

III. Discussion

After careful consideration of the crossclaims pled by Mr. Perry, the Court concludes that these claims are conclusory and lacking the necessary factual predicate.  The Court begins its analysis by discussing the tort of intentional interference with an expectancy interest.  The elements of this claim are:  (1) the existence of an expectancy; (2) intentional interference with the expectancy through tortious conduct such as duress, fraud, or undue influence; (3) causation and (4) damages. Claveloux v. Bacotti, 778 So. 2d 399, 400 (Fla. Dist. Ct. App. 2001); Whalen v. Prosser, 719 So. 2d 2, 5 (Fla. Dist. Ct. App. 1998); Allen v. Leybourne, 190 So. 2d 825, 829 (Fla. Dist. Ct. App. 1966); see also Chase v. Bowen, 771 So.2d 1181, 1186 (Fla. Dist. Ct. App. 2000)(Sharp, J., dissenting) (quoting Restatement (Second) of Torts § 774B) ("One who by fraud, duress, or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he or she would otherwise have received is subject to liability to the other for loss of the inheritance. . . .").  Florida cases involving allegations of undue influence in the will context apply to cases arising in other contexts. Taylor v. Johnson, 581 So.2d 1333, 1334 (Fla. Dist. Ct. App. 1990).

In determining whether the decedent acted under his own free will, the Court should take into consideration all circumstances surrounding the transaction, including the age, sex, state of health and level of knowledge of the decedent. Burton v. McMillan, 52 Fla. 469, 42 So. 849, 851 (1907).  In other words, in making a determination regarding undue influence, "the influence must amount to over persuasion, duress, force, coercion, or artful or fraudulent contrivances to such an extent that there is a destruction of free agency and willpower of the testator."   Raimi v. Furlong, 702 So.2d 1273, 1287 (Fla. Dist. Ct. App. 1997).

8

Here, the claim for intentional interference with an expectancy interest is not supported by sufficient factual allegations.  At best, Mr. Perry alleges that: (1) there was a 48 year age difference between decedent and Ms. George; (2) during their relationship and subsequent marriage decedent increased his spending levels; (3) Ms. George lied about a prior romantic relationship; (4) Ms. George wrote herself checks on decedent's accounts and forged his signature on several checks and (5) Ms. George wrote a check drawn on decedent's account to purchase a home with decedent as tenants-by-the-entirety.  While lying and forging signatures are inappropriate actions which cannot be condoned, such allegations do not establish or rise to the level of  undue influence.[5]  A review of cases from the Florida courts dealing with undue influence supports this conclusion.

In re Estate of Lightfoot, 433 So. 2d 607 (Fla. Dist. Ct. App. 1983), the Court observed that the following facts supported a finding of undue influence: (1) the presence of the beneficiary at the will's execution; (2) suggestion by the beneficiary that the original will was not legal; (3) the beneficiary's arrangement for the appointment to draft the will and physically taking the testator to the attorney; (4) the beneficiary writing most of the contents of the will; (5) the beneficiary advising the attorney regarding the deletion of parts of the will and having access to the will in the safety deposit box and (6) a confidential relationship with the testator as evidenced by the sole beneficiary living alone with the testator. Id. at 608.

Equally helpful is the case of Hack v. Estate of Helling, 811 So. 2d 822 (Fla. Dist. Ct. App. 2002).  In that case, the testatrix was in her late 70s and had become "easily upset,

---

[5] Nor do allegations such as "Nina George ingratiated herself to the very lonely Robert Perry and soon, Robert Perry became completely dependent on her."  (Crossclaim ¶ 56.)

forgetful, agitated and tired."  Several doctors opined that the testatrix suffered from dementia and could no longer recognize family members.  Janes, the individual accused of undue influence over the testatrix, had taken over the testatrix's care completely, cut off her contacts with friends and family, took control of her finances, placed herself on bank accounts and had the attorney prepare for her a general "family power of attorney."  Id. at 824. In addition, Janes placed the testatrix in a nursing home, made arrangements for Janes to go to the attorney's office to execute a new will naming herself as personal representative, dropped relatives as beneficiaries and named the Humane Society, Janes and Janes' daughter as beneficiaries.  Id. at 824-25.

Significantly, in contrast with these highlighted cases, the facts before the Court merely demonstrate a romantic relationship between two individuals with a substantial age difference. The fact that decedent chose to spend money on his new wife, alter his estate planning and co-own a home with his new wife does not meet the pleading requirements for undue influence.[6] Moreover, unlike the facts of the case discussed supra, the decedent used his original attorney to draft both the Second Restatement of the Robert P. Perry Revocable Trust Agreement and the First Amendment to the Second Restatement of the Robert P. Perry Revocable Trust Agreement, which included adding Ms. George and her daughter to these agreements.  Nonetheless, Mr. Perry may re-plead this claim, if he can do so in good faith and consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

Next, the Court will address the claim for aiding and abetting breach of fiduciary duty.

---

[6] The Court rejects Ms. George's argument that this tortious interference with expectancy must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  This is not a fraud claim, despite the fact that evidence of fraud may be used to prove the claim.

To establish this claim, Mr. Perry must establish:  "(1) a fiduciary duty on the part of the primary wrongdoer; (2) a breach of this fiduciary duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing." In re Caribbean K Line, Ltd., 288 B.R. 908, 918 (S.D. Fla. 2002); AmeriFirst Bank v. Bomar, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991). "While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud." Lamm v. State Street Bank & Trust Co. — F. Supp. 2d —,  No. 12–CV–80317, at * 8 (S.D. Fla. Aug. 21, 2012) (quoting  Lawrence v. Bank of Am., N.A., No. 8:09–CV–2162–T–33TGW, 2010 WL 3467501, at *3 (M.D. Fla. Aug.30, 2010)) (internal quotation marks omitted).   "Conclusory statements that a defendant actually knew is insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant should have known that something was amiss." Platinum Estates, Inc. v. TD Bank, N.A., No. 11–60670–CIV, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012) (alterations and internal quotation marks omitted).

Here, there are insufficient allegations that Ms. George knew decedent owed a fiduciary duty to Mr. Perry or that decedent's actions violated this duty.  Nor do the alleged facts show that Ms. George assisted decedent in violating his fiduciary duty.  The Court finds that Mr. Perry's reliance on the allegation that Ms. George "knowingly aided and abetted [decedent's] breach of his fiduciary duty" (Crossclaim ¶ 96) is conclusory.  Mr. Perry may re-plead this claim to provide

a sufficient factual basis to support the legal conclusions alleged. [7]

With respect to the motion to strike, the Court has examined the Complaint in its entirety as well as the paragraphs highlighted by Ms. George as examples of "redundant, immaterial, impertinent, or scandalous matter." After careful review, the Court finds that the Complaint does not contain any material barred under Rule 12(f). Given that Mr. Perry is alleging that Ms. George engaged in a financial scheme, allegations that might be scandalous in supporting a different cause of action are not scandalous here. Thus, the Court denies the motion to strike on this basis.

IV.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Cross-Claim Defendant Nina George's Motion to Dismiss Cross-Claim and to Strike Allegations of Cross-Claim (DE 17) is **GRANTED IN PART AND DENIED IN PART.** The motion to dismiss is granted and Mr. Perry is given leave to amend the crossclaims. The motion to strike is denied.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of October, 2012.

KENNETH A. MARRA
United States District Judge

---

[7] Ms. George also contends that Mr. Perry lacks standing because, while Mr. Perry alleges that he is the beneficiary of the Perry trust (Crossclaim ¶ ¶ 87, 95), the Perry trust documents only refer to him as a potential successor trustee and not beneficiary. (Mot. at 5-6.) In fact, certain provisions of the various documents submitted to the Court indicate that either Mr. Perry or the David Perry Trust may be the beneficiary. See First Restatement of the Perry Revocable Trust Agreement, Articles IV(B)(2)(b)(1) and (2), Article IV(B)(2)(c)(2)(ii), DE 1-3; Second Restatement of the Robert P. Perry Revocable Trust Agreement, Article III(G), Article IV(C), DE 8-2. At this early stage in the proceedings, the Court does not have an adequate record to make a determination on the question of standing. Ms. George, however, may re-assert her standing argument at a later point in the proceedings.